[Civ. No. 2267. Third Appellate District.—February 4, 1921.]

HERBERT W. FURLONG, Appellant, v. RICHARD WHITE et al., Respondents.

[1] ACCOUNTING—PART PROFITS OF SALE OF REAL ESTATE—WRITTEN AGREEMENT — FINDINGS — TERMS OF PRIOR ORAL AGREEMENT. — Where in an action to compel the defendant to account to the plaintiff for a one-half interest in the profits ensuing from a sale of real estate, the defendant, who sold the land himself, alleged in full a written agreement certain in its terms wherein it was expressly agreed that plaintiff was to share in the profits only in the event that he sold the land, and the execution of such agree-

---

1. Effect of contract expressly making broker's right to commissions dependent upon "sale" of property or other condition beyond that ordinarily implied, note, 29 L. R. A. (N. S.) 533.

ment was not denied, a finding that such agreement expressed the terms of a prior oral agreement merged therein sufficiently specified the terms of such prior agreement.

[2] PLEADING—DEFENSE OF WRITTEN INSTRUMENT—REBUTTAL—RIGHT OF PLAINTIFF.—Where a defense is founded upon a written instrument, the plaintiff may controvert the instrument by evidence of fraud, mistake, undue influence, and like defenses under section 462 of the Code of Civil Procedure, and is not required to file an affidavit setting up any such ground upon which he may rely.

[3] FINDINGS—ISSUE RAISED BY EVIDENCE—WANT OF FINDING—NEW TRIAL—DISCRETION.—Where an issue arises out of the evidence rather than the pleadings, and the party in whose behalf such issue is so raised, after being served with proposed findings by the other party, remains silent as to such issue, knowing from the court's opinion that the issue must be found against him, there is nothing in such conduct to appeal to the court's discretion, if any there be, when the party moves for a new trial because of failure to find on the very issue concerning which he remained silent, particularly where he was expressly given the opportunity to speak.

[4] ID.—FAILURE TO FIND ON MATERIAL ISSUE — EVIDENCE — INSUFFICIENT GROUND FOR REVERSAL.—A judgment will not be reversed for failure to find on a material issue where it appears from the evidence that the finding if made would have been adverse to the appellant.

[5] CONTRACTS — WRITTEN AGREEMENT — MEMORIAL OF PRIOR ORAL AGREEMENT—CONSIDERATION.—Where a written agreement constitutes simply a written memorial or expression of a prior oral agreement no other consideration than that supporting the parol agreement is required.

APPEAL from a judgment of the Superior Court of Butte County. W. M. Finch, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Alan C. Van Fleet, Jerome D. Peters, H. F. Chadbourne, John S. Partridge and Charles A. Christin for Appellant.

Guy R. Kennedy, W. H. Carlin, U. S. Webb, Attorney General, and Frank English, Deputy Attorney-General. for Respondents.

BURNETT, J.—The action was to compel defendant White to account to plaintiff for a one-half interest in the profits ensuing from the sale of certain property in

Butte County, known as the Lott ranch. The judgment, from which the appeal is taken, was in favor of all the defendants, but it may be stated that it is not disputed that the decision is correct as to the defendants other than said White.

The complaint alleges that by virtue of certain instruments in writing, dated January 2, January 15, and March 12, 1917, constituting virtually the same contract, one Lott, who was the owner of said property, gave defendant White an option to purchase it. That on February 17, 1917, defendant Richard White entered into a certain contract and assignment with plaintiff, wherein it was recited that White was the owner and holder in his own name, but for the use, benefit, advantage, and profit of both parties to the agreement, of the said option; that the parties would share equally and mutually co-operate with each other in promoting a sale of the property under option, and said agreement containing this clause: ''Now this indenture witnesseth that the said party of the first part (Richard White), for and in consideration of the premises, has assigned, transferred and set over to the party of the second part (H. W. Furlong) and by these presents does hereby assign, transfer and set over to the said party of the second part an undivided and equal one-half interest in and to that said above-described option from said Charles F. Lott to said Richard White as the same is evidenced by said agreements of January 2, 1917, and January 15, 1917, and the undivided one-half and equal share of interest in and to all advantages or profits to be derived from or that may accrue from said option, either by direct purchase thereunder or sale to others or otherwise.''

The complaint then alleges that in October, 1917, defendant White entered into an agreement with the state land settlement board for the sale of said Lott ranches to said board for the sum of $165,000, and that he has failed to account to plaintiff for one-half of the profits derived from said sale. It may be added that copies of the instruments to which plaintiff refers are attached to the complaint and made a part thereof.

Defendant White in his answer admitted the execution of said option and the purported assignment on February 17, but he alleged that this latter instrument was executed

in connection with, and really as part of, a *prior oral agreement* between plaintiff and defendant White, and that on the twenty-seventh day of September, 1917, said prior oral agreement and said agreement of February 17, 1917, were both merged in and supplanted by a written agreement dated September 27, 1917, which agreement in effect, as stated by appellant, "provided that in the event that Furlong obtained a purchaser for the Lott ranch then, and in that event only, should Furlong receive one-half of the net profits derived from such sale. The September agreement further provided that Furlong's right to sell the property should not be deemed exclusive, and contained an express reservation of the right on the part of White to sell the property." It was further alleged that, on May 7, 1918, defendant White sold a portion of said Lott ranch to said state land settlement board and that "said sale of said lands as evidenced by said contract of May 7, 1918, aforesaid, and the said delivery of said deed in accordance therewith was negotiated, carried on, conducted, and consummated wholly by the defendant Richard White on the one side and said state land settlement board on the other, plaintiff taking no part whatsoever therein. That as a matter of fact neither after the twenty-seventh day of September, 1917, nor at any time in said complaint or in this answer set forth or referred to did plaintiff make or consummate any sale of said lands and premises or report to the defendant Richard White any purchaser who was ready, willing, and able to purchase said lands and premises or any part or portion thereof." Defendant White, therefore, claimed that plaintiff was not entitled to any portion of the profits of said sale, and with this claim the court agreed.

Appellant in his opening brief declares that his contention "turns wholly on the sufficiency of the findings as a matter of law, and is now concerned with the insufficiency of the evidence to support the same." As to this, it cannot be doubted that the judgment that plaintiff take nothing follows as a logical and necessary conclusion from the facts found by the court. It is also true that these findings of fact cover all the material issues that are expressly raised by the pleadings. We deem it unnecessary to detail these findings. Indeed, the controverted facts are few. Appellant admits that the "entire controversy turns on the effect of

the two agreements between White and Furlong, the agreement and the assignment of February 17, 1917, and the agreement of September 27, 1917." But the court found that the contract of February was superseded and supplanted by the contract of September. The parties had the legal right to substitute this latter for the former. This is not, and cannot be, disputed. Hence we must look to the September contract to measure the rights of the parties. But appellant admits that "The September agreement, however, provided that in the event that Furlong procured a purchaser, then and in that event only would Furlong receive one-half the profits. The September contract completely changes the February contract. Instead of a partnership agreement, a joint venture, we have what purports to be a contract between a principal and his agent. Furlong is no longer on an equal basis with White, but is dependent wholly *on his success in making a sale* for his share in the profits." The court further found—and the fact is admitted—that the sale was made entirely by White. According to appellant's own interpretation of said agreement of September 27th, therefore, no other conclusion could be drawn than the one in favor of defendant.

However, appellant's real objection probably is that the court failed to make certain material findings that would have operated to nullify the effect of the finding as to said agreement of September 27th, and would have required the court to give full force and effect to said agreement of February 17th according to its terms.

[1] Of these the first specification is that "the findings leave us in ignorance as to the terms of the 'prior oral agreement,' except in so far as we discover that the agreement of September 27th, 'expressed the terms and conditions and intent of said prior oral agreement.' The court erred in not making a direct finding as to the terms of this prior agreement." Herein appellant is entirely in error. The execution of said agreement of September 27th was not denied, its terms appeared in the instrument, which was set out in full, and the court found that it contained the expression of the parol agreement. There is no uncertainty as to the terms of the contract embodied in said written instrument. The finding, therefore, leaves us in no doubt as to what said parol agreement was. But even if the finding

were uncertain as to some of the terms of said contract, it would not necessarily be a sufficient reason to reverse the judgment.

The other objections are entitled to more serious consideration. They relate to the validity of the said contract of September 27th. Herein appellant says: "If we can show that the September contract is invalid, then the February contract becomes the measure of the rights of the parties and the plaintiff must prevail." It is claimed that the learned trial judge entertained a similar view as shown by his declaration: "If the agreement of September 27th had not been executed, then it would be perfectly clear that the plaintiff ought to prevail in this action."

[2] The validity of said September agreement is assailed upon the grounds that it was without consideration and that it was secured by fraud and undue influence. These elements were not pleaded, but since said agreement appeared for the first time in the answer, it is the claim of appellant that these defenses are pleaded by operation of law. The decisions are indeed to the effect that where the defendant has pleaded a written instrument in defense, the plaintiff "may controvert the instrument by evidence of fraud, mistake, undue influence, compromise, payment, statute of limitations, estoppel, and the like defenses, under section 462 of the Code of Civil Procedure." (*Moore* v. *Copp,* 119 Cal. 429, [51 Pac. 630].) Nor in such cases is the plaintiff required to file an affidavit setting up any such ground upon which he may rely, although such affidavit was filed herein by plaintiff.

It may be added that plaintiff was not compelled to anticipate any defense founded upon the September agreement. (*Janes* v. *Throckmorton,* 57 Cal. 368.) However, as he knew of the execution of the subsequent agreement of September 27th, and that it was inconsistent with the terms of the February contract, it would have been commendable practice for him in his complaint to have expressly alleged the grounds of its asserted invalidity. If so, the court would have been less likely to overlook these elements in making the findings.

[3] It is seriously claimed by respondents, however, that appellant should be precluded from urging any such objection by reason of the fact that he had an opportunity

but declined to offer any amendments to the findings. In that respect the record shows as follows:

"After receipt by counsel for plaintiff of a copy of the trial court's written opinion in this case, counsel for plaintiff did address a communication to the said trial judge, under date of December 14, 1918, as follows: 'We have not been served with any copy of the proposed findings and when they are served, will desire to be heard on the settlement of the same.'

"The said· findings of fact and conclusions of law, as finally signed by the said trial court, were served by counsel for defendants upon counsel for plaintiff on January 3, 1919.

"On January 26, 1919, the said trial judge wrote to counsel for the plaintiff as follows:

" 'Will you please send me any proposed amendments to the findings in the case of Furlong vs. White, which you desire to make by the last of this week.'

"On January 29, 1919, said counsel for plaintiff did reply to the said trial judge by communication as follows:

" 'In re Furlong vs. White et al., I beg to acknowledge receipt of your letter of January 26th, and to advise you that we have decided not to submit any amendments to the findings as proposed.'

"The said findings and conclusions of law were thereupon signed and filed by the said trial judge."

Counsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.

We do not think that appellant is thereby estopped from urging the point, nor do we question the good faith of counsel, but we are of the opinion that the trial judge in denying the motion for a new trial was justified in making this comment: "In those cases where an issue arises out of the evidence rather than the pleadings, and the party in whose behalf such issue is so raised, after being served with proposed findings by the other party, remains silent as to such issue, knowing from the court's opinion that the issue must be found against him, there is nothing in such conduct

to appeal to the court's discretion, if any there be, when the party moves for a new trial because of failure to find upon the very issue concerning which he remained silent, particularly where he was expressly given the opportunity to speak."

The answer of appellant is, of course, that the court had no discretion to deny the motion, since a judgment based upon findings, which do not determine all the material issues, is a decision against law, and presents a case demanding a new trial. (*Kaiser* v. *Dalto,* 140 Cal. 167, [73 Pac. 828].)

However, in his motion for a new trial he should have specifically mentioned this ground. (*Kaiser* v. *Dalto, supra; Haight* v. *Tryon,* 112 Cal. 6, [44 Pac. 318].)

Nevertheless, the question is reviewable upon the appeal from the judgment. (*Emirzian* v. *Asato,* 23 Cal. App. 251, [137 Pac. 1072]; *Math* v. *Crescent Hill Gold Mines Co.,* 31 Cal. App. 636, [161 Pac. 140].)

[4] But another principle operative to defeat appellant is this: When a party relies upon this ground he must show to the appellate court not only that no finding was made upon a material issue, but also that the evidence would justify a finding in his favor. (*Himmelman* v. *Henry,* 84 Cal. 104, [23 Pac. 1098].)

If the finding must have been adverse, its omission is not sufficient to authorize a reversal of the judgment. (*Winslow* v. *Gohransen,* 88 Cal. 450, [26 Pac. 504]; *Estate of Carpenter,* 127 Cal. 582, [60 Pac. 162].)

In the opening brief of counsel no quotation is made of any testimony nor is reference made to any part of the transcript in which may be found any evidence of fraud, undue influence, or want of consideration. For that reason we would be entirely warranted in assuming that no such evidence is contained therein. If parties are too indifferent to point out the evidence upon which they rely, they cannot expect an appellate court to search for it through a voluminous record. However, we have read the entire transcript and we are satisfied that this contention of appellant cannot be maintained.

[5] As to the consideration for said agreement of September 27th, the lower court was warranted in holding that no other consideration than that supporting the original

parol agreement was required. This follows for the reason that said instrument of September 27th did not constitute a new or additional contract between the parties. It was simply a written memorial or expression of the parol contract which was agreed upon by the parties in the beginning, and it was therefore supported by the consideration for said parol agreement. Of this there can be no possible doubt. The parties themselves in said September instrument deliberately declared that "At and prior to the date of the execution of said option the parties hereto had entered into an oral agreement between themselves—which said agreement is now in force and effect. Such agreement and understanding between the parties has never been formally executed or reduced to writing. . . .

"Whereas, it is desirable and for the mutual satisfaction and protection of both parties hereto that the agreement relating to said option between them should be definitely stated and executed in writing," etc.

It is admitted by appellant that "If the *prior oral agreement* was a valid and subsisting agreement at the time of the execution of the September contract, then it may well be said that the September contract required no new consideration." We could not expect to find better evidence that it was "a valid and subsisting agreement" than the written declaration of the parties to that effect. We may add that there was abundant parol evidence, admitted without objection, as to the terms of said contract and that the purpose of the parties in executing said September instrument was simply to preserve written evidence of said original contract. But appellant replies: "We contend, however, that the September contract cannot be held to be 'the written expression of the original contract' for the 'original contract' was merged in and supplanted by the February contract and was no longer in existence." As to this, though, the parties themselves should be the best judge. They not only declared in the September instrument, as we have already seen, that said parol contract was in force, but they also stated that the purpose and effect of the February agreement were to protect "the interests" of Furlong in said parol agreement and "the assignment to the party of the second part set out in Exhibit 'A' hereto annexed shall be binding upon and enforceable against the

said party of the first part for the purpose of securing and protecting the party of the second part, his heirs and legal representatives in whatever interest he or they may have under the terms and conditions of this agreement.'' Here, again, parol evidence was also received without objection that said February agreement, although in the form of an absolute assignment, was executed as security for the enforcement of whatever rights or interest appellant might have in said ''original agreement.'' There can, indeed, be no doubt of the sufficiency of the evidence to support such conclusion, and we do not understand appellant to contend that this purpose could not be shown, notwithstanding the instrument is in the form of an assignment. The situation does not involve the question of parol evidence being received to vary the terms of a written instrument or of a parol agreement being merged into a written contract, but the theory, which the trial court adopted, and which is supported by the evidence, is that the parties entered into an oral contract providing that if appellant should sell the property he would be entitled to a commission, but that respondent White should have the privilege of selling the same without accounting to appellant; that this contract remained in force throughout the entire transaction and was recognized and declared by the parties to be the measure of their rights: that the February instrument was executed to secure the enforcement of this contract, and the parties thereafter embodied said oral contract in the written instrument of September 27th, and therein also defined and limited the purpose and effect of said February instrument.

In reference to the claim of fraud relating to the representations of White as to the meaning of the September agreement the trial judge declared: ''In this connection it is important to consider the mental capacity of the two men. Both appear to be above the average in mentality. Both are of mature years and have had wide and varied experience. Both are proficient in the use and understanding of the English language.'' In view of these facts we consider it highly improbable that plaintiff did not understand the significance of this final instrument.

As to undue influence, there was not between the parties the relation of attorney and client. It is true that Mr. White was and is an attorney at law, and for that reason

was requested to draft said written instruments, but the evidence shows without substantial conflict that the parties dealt at arm's-length, and that each was keen and alert to protect his own right and interest in the transaction. The record justifies this statement of the trial judge: ''The charge of undue influence may well be omitted from discussion as I do not find any evidence to show that Furlong's mind was dominated by that of White, or that the will of the latter was substituted for that of the former in the execution of the agreement.''

We are not unmindful of the contention of respondent that the findings of the court do actually cover these considerations, but we deem it unnecessary to inquire as to that.

The point is made that it was not proper to show that the February agreement was really intended as security since there was no allegation in the answer to that effect, the averment being that the February agreement was executed ''as a part of the prior oral agreement.'' As to this it is sufficient to say that the evidence was received without objection; in other words, the case was tried upon the theory that the question was in issue and it is now too late to contend for the contrary. In reference to the finding upon this matter it may be said that, while it contains said language of the answer, it also recites that said agreement of February 17th was merged in and supplanted by the written instrument of September 27th, ''which said instrument of September 27, 1917, expressed the terms and conditions and intent of said prior oral agreement and said agreement of February 17, 1917, aforesaid, and is in writing and is in words and figures following, to wit.'' Then follows a copy of said September agreement, which shows beyond peradventure that the parties intended the February contract to constitute security for the performance of the oral contract. Thus does the finding fully support the theory upon which the case was decided.

In the closing brief, in direct conflict with his admission in his opening brief, appellant contends that even the September instrument does not limit his right to an accounting to the situation wherein a sale should be made by himself. For the first time he asserts that, construing the instrument as a whole, it is a fair inference that he was entitled to

his allotment whether the sale was made by him or by White. We can see no merit in this contention. The instrument, as we have seen, purports to be and is a full expression of the rights of the parties and it contains no provision for any participation in the profits by appellant except upon condition that he find a purchaser. The provision that "The party of the first part has agreed and does hereby agree, that for and in consideration of the party of the second part promoting a sale and finding a purchaser or purchasers of the lands and premises . . . and a sale being made to such purchaser . . . the party of the second part shall be entitled to and receive, and the party of the first part agrees to pay him, one-half of the net profits arising from such sale, the same to become due and payable upon the full completion of such sale and the full payment of the purchase price thereof," necessarily implies that it was only upon such condition that the party of the second part was to be entitled to a part of the profits. But if any further assurance were needed it can be found in the provision reserving to the party of the first part the right to sell said property himself or through other agents.

We are not disposed to notice specifically the decisions cited by appellant, as they involve familiar principles not in conflict with anything herein determined.

On account of the earnestness with which the able counsel for appellant have urged their contentions we have considered them somewhat at length, but we find no substantial reason for reversing the judgment. We may add that, if for any of the reasons urged by them, which may possess some merit, the cause should be reversed, it is perfectly apparent from the views expressed by the learned trial judge that the asserted errors or irregularities would be corrected upon a new trial, and a judgment would be rendered again in favor of respondent.

However, we are satisfied that within the limits prescribed for the exercise of our jurisdiction, we cannot disturb the finding below.

The judgment is therefore affirmed.

Prewett, P. J., *pro tem.*, and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 5, 1921.

All the Justices concurred.