[Civ. No. 22689. Fourth Dist., Div. One. Oct. 29, 1981.]

HUGO BASKE, Individually and as Executor, etc., Plaintiff and Respondent, v.
FRANKE C. BURKE, Defendant and Appellant;
LINNIE COOPER, Defendant and Respondent.

COUNSEL

James H. Burke for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Olins, Foerster & Siegel and Barrett J. Foerster for Defendant and Respondent.

OPINION

**STANIFORTH, J.**—Ninety-year-old Linnie Cooper was served (Aug. 6, 1978) with summons and copy of executor Hugo Baske's complaint

for partition and sale of a 19th century American masterwork painting by Charles Russell. Cooper sent several (at least five) documents written in her own handwriting to the "Clerk of the Superior Court." These communications were placed in the court records but never filed as a response or answer to Baske's complaint—despite her written request to "do what was needed [to] file," an offer to "pay fees needed" and claim of right "1/4 interest" in the painting. On October 8, 1978, a judgment by default was entered against Cooper and her one-fourth interest in the Charles Russell painting declared to be a life estate valued at 4.06 percent instead of the one-fourth outright ownership claimed by her. The painting sold for $185,000.

On February 21, 1980, Cooper orally moved to set the default aside, whereupon the court upon stipulation of the parties agreed to hear Cooper's motion. After an evidentiary hearing Cooper's motion was granted and the default judgment taken against her vacated upon the grounds the court clerk mistakenly refused to file papers and documents sent by Cooper as an answer to Baske's partition action. The trial court construed Cooper's letter of August 27, 1978, and accompanying "pleading" as an answer to the complaint that should have been filed. Burke appeals the order setting aside the default.

## FACTS

Linnie Cooper was 90 years old as of August 10, 1979. Many years ago, she inherited (as one of four Cooper children) a 25 percent interest in the Charles Russell oil painting. The ownership remained in the four Cooper children and the painting was stored at Bekins for some 39 years. On February 1, 1973, Cooper executed a document entitled bill of sale, covering several items of personal property. It declared she owned "1/4 interest in this (Charles Russell) picture" and further stated she would grant to Franke C. Burke the one-fourth interest *on the condition, that I retain possession and use of everything, for as long as I need them or want them.* This transfer or gift was without consideration. Cooper testified she intended no transfer of ownership to Franke C. Burke in the painting if the condition regarding her retaining of possession and use was violated. She argues since the painting had been sold contrary to her consent, she could no longer possess or use it. On June 1978, Hugo Baske, as executor of the estate of Alice V. Baske, brought this partition action to have a declaration of rights of all of the parties who had an ownership interest in the painting. Cooper was served on August 6, 1978, with summons and a copy of the complaint.

Her first communication to the clerk of the superior court was on August 8, 1978, two days after receipt of the complaint. A total of at least five communications were sent by her to the clerk of the court. One document dated and sent August 27, 1978, requested the "papers you may consider a pleading for my rights! Will you please do what you say is needed 'file' it. I will of course pay any fee, if required." The letter and document written by Cooper in her handwriting was addressed "To the Superior Court of the State of California." These documents were placed in the court file by the court clerk but were never filed as Cooper's answer or response to Baske's complaint. In one of the not-filed documents, Cooper set forth her position on the merits of Baske's petition—her rights in the painting and the reasons therefor. She said among other things: She owned a "one-fourth interest outright" thereby denying the allegation of Baske's complaint (on information and belief) that she had only a life estate interest in the painting. The various documents recited here were not filed by the court and as a consequence, Baske sought and obtained (Sept. 29, 1978) a default against Cooper. After entry of the default, the court declared Cooper's interest to be a life estate valued at 4.06 percent of the painting. Thereafter the painting was sold for $185,000.

With the aid of the office of the San Diego District Attorney, Cooper appeared and objected to the referee's request for permission to distribute the funds from the sale of the painting. The court ordered, among other things, that 25 percent of the net proceeds of the sale ($39,364.13) be deposited by the referee with the clerk of the superior court to be held until the interests of Burke and Cooper to the funds were resolved.

Thereafter (Feb. 13, 1980) a motion was filed to set aside the default judgment. At the hearing a letter from Cooper to Judge Zumwalt requested "I would like to have a motion to have the default against me taken away." Thereupon the court inquired of Burke's attorney (who was also the husband of Burke) if his client would consent "to go forward" on Cooper's motion. The attorney answered "Yes. I would like to consult my wife but my reaction is to go forward." Later the attorney replied in the affirmative, stating "My wife has authorized me to do so." Thereafter the testimony was taken and the court set aside the default, concluding "that the letter of Linnie Cooper to the clerk of the court and placed in the file before the default judgment herein was taken against her, is hereby construed to be a response to the partition complaint served upon her herein and is found that said response was

filed in a timely manner." The default judgment was set aside only "insofar as it relates to the division of the proceeds derived from the sale of the 25 percent portion of the CHARLES RUSSELL PAINTING which originally stood in her name . . . ."

## DISCUSSION

■ Preliminarily we note the order vacating the judgment and setting aside the default is an appealable order and decision. (*Yarbrough* v. *Yarbrough* (1956) 144 Cal.App.2d 610 [301 P.2d 426].) It is a special order after judgment and therefore appealable. (*Id.*, at p. 614.)

Burke contends the trial court lacked jurisdiction to make an order vacating this judgment. This contention is not sound. ■ The law favors trial on the merits and looks with disfavor upon a party who seeks to take advantage of the excusable mistake or neglect of his adversary. (*Daher* v. *American Pipe and Construction Co.* (1968) 257 Cal.App.2d 816, 819 [65 Cal.Rptr. 259]; *Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 854 [48 Cal.Rptr. 620, 409 P.2d 700].) The discretion of the court to be exercised in setting aside a default judgment should be in conformity with the spirit of the law as expressed above. (See *Benjamin* v. *Dalmo Manufacturing Co.* (1948) 31 Cal.2d 523, 526 [190 P.2d 593].)

The principles governing exercise of trial court discretion in granting equitable relief from judgment are set forth in the Restatement of Judgments, chapter 5, section 120. In general, such relief may be granted to an injured party "if in the action he had no reasonable opportunity to have determined impartially a meritorious claim or defense which he had." (Rest., Judgments, *supra*, § 118.) And more particularly, an aggrieved person may have equitable relief "if, without fault, he did not know of the action" and this was due to the "error of the court or of its officers." (Rest., Judgments, *supra*, § 120, subd. (b).) This principle has been applied in California in the circumstances where ground for relief is not based so much upon fraud or other misconduct of the defendant as it is in the excusable neglect of the plaintiff to appear and present his claim or defense. If such neglect results in an unjust judgment without a fair adversary hearing, the basis for equitable relief is present and is often called extrinsic mistake. (See *Bacon* v. *Bacon* (1907) 150 Cal. 477, 486 [89 P. 317]; *Olivera* v. *Grace* (1942) 19 Cal.2d 570, 578 [122 P.2d 564, 140 A.L.R. 1328]; *Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 471 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368]; *Bloniarz* v. *Roloson* (1969) 70 Cal.2d 143, 146 [74

Cal.Rptr. 285, 449 P.2d 221].) ■ Such authority does not derive from statute but "[t]he power to set aside judgments obtained through extrinsic fraud and mistake is within the equity jurisdiction of a court." (*Bloniarz* v. *Roloson, supra,* at p. 147.) This broad general equitable power is to be distinguished from the power to amend and control process, orders of a court which is reflected in section 128, subdivision 8 of the Code of Civil Procedure, for such power is limited to such exercise as the correction of clerical errors. (See *Drinkhouse* v. *Van Ness* (1927) 202 Cal. 359, 370 [260 P. 869]; *Bloniarz* v. *Roloson, supra,* 70 Cal.2d at p. 148.) Thus, the distinction is between the equity powers which are inherent in a court of general jurisdiction and those powers which are primarily of an administrative nature that inhere in all courts of record, not simply courts of general jurisdiction.

The rule has been stated: "It was a settled doctrine of the equitable jurisdiction—and is still the subsisting doctrine except where it has been modified or abrogated by statute ... that where the legal judgment was obtained or entered through fraud, mistake, or accident, or where the defendant in the action, having a valid legal defense on the merits, was prevented in any manner from maintaining it by fraud, mistake, or accident, and there had been no negligence, laches, or other fault on his part, on the part of his agents, then a court of equity will interfere at his suit .... The ground for the exercise of this jurisdiction is that there has been no fair adversary trial at law." (5 Pomeroy, Equity Jurisprudence (2d ed.) Equitable Remedies, pp. 4671, 4672.) ■ The doctrine of relief in equity from mistake has applied where the mistake is that of the clerk of the court. (See 46 Am.Jur.2d, Judgments, § 811, p. 968; *Oliver* v. *Pray* (1829) 4 Ohio 175.) In 49 Corpus Juris Secundum, Judgments, section 365, page 724, the authors recognize "[r]elief is sometimes granted for mistake made by officers of the court, at least when the mistake is of a ministerial rather than a judicial character." (See cases cited; fns. omitted.) In the recent case of *Vogel* v. *Vogel* (Tex.Civ.App. 1966) 405 S.W.2d 87, 90, it was said: "Here, as in Hanks, appellee's predicament is due to the acts of an official of the court in which the suit was pending in matters pertaining to his duties. If all of the other elements of a bill of review are present, a complainant is entitled to relief where the error of a court official has prevented complainant from presenting his defense. [Citations.]" (See also *Hanks* v. *Rosser* (1964) 378 S.W.2d 31, 35.) In Restatement of Judgments, section 120, subdivision (b), illustration 9, page 585, it is said: "A brings an action against B who appears and answers. By error the clerk of the court did not give B the customary notice of trial, as a result of

which B justifiably does not appear and is defaulted. When it is too late for him to take further proceedings in the action, B learns the facts. Equitable relief will be granted."

The facts of this case are without conflict: the letters of Cooper addressed to the clerk of the superior court were not filed but simply retained in the records without further action by the clerk. These documents were sent to the superior court before the default judgment was taken against Cooper. The documents clearly are of such nature as to constitute in substance an answer to the plaintiff's petition. It was timely received, it was addressed to the Superior Court of the State of California. In such circumstance, the entry of the default against Cooper by the clerk after failure of the clerk to obtain directions from the court as to the filing of the questioned document constituted clerical error.

Furthermore, the action of the clerk in entering the default under Code of Civil Procedure section 585 was wholly ministerial. The clerk has no authority to determine the sufficiency either of the substance or form of the pleading tendered. (*Goddard* v. *Pollock* (1974) 37 Cal.App.3d 137, 143 [112 Cal.Rptr. 215].) The clerk in possession of a responsive pleading has no authority to enter the default. (See *Rose* v. *Lelande* (1912) 20 Cal.App. 502, 504 [129 P. 599].)

In *Potts* v. *Whitson* (1942) 52 Cal.App.2d 199, 208 [125 P.2d 947], the court clerk took it upon himself to determine that the answer filed was insufficient. Thus, when such are the facts "the entry of the default by the clerk was wholly void and subject to expungement at any time. It is still wholly void and can give no support to the judgment." (*Id.*, at p. 208.) The trial court has determined and we agree that a clerical act of a ministerial nature took place in the entry of the default against Cooper.

Cooper's motion here to set aside the default and the judgment based thereon, while in motion form and not in form of an independent action is an appropriate procedure to invoke the jurisdiction of a court of equity. In *Bloniarz* v. *Roloson, supra*, 70 Cal.2d 143, the invocation of the power of the court of equity was by motion rather than by an independent proceeding. The Supreme Court said: "This power may be invoked by motion or by an independent action in equity. [Citations.]" (*Id.*, at p. 146.)

■ Thus neither the passage of time nor the form in which her motion was made bars Cooper from the relief she requested. It is true she did not give a 10-day notice to Burke. Cooper's letter said she "would like to make a motion to have the default against [her] taken away." In this fact context the attorney for Burke consented to "go forward" on the motion. Any defect in the procedural form was waived by the consent that the court proceed based upon the papers and notices there present.

■ One further impediment to the exercise of the broad equity powers to vacate a judgment need be examined. The existence of a meritorious defense to the action is generally regarded as a prerequisite to vacating or setting aside of a default judgment. (See Rest., Judgments, *supra*, § 118; *Weitz* v. *Yankosky, supra*, 63 Cal.2d 849, 854; *Lynch* v. *Spilman* (1967) 67 Cal.2d 251 [62 Cal.Rptr. 12, 431 P.2d 636]; *Bailey* v. *Roberts* (1969) 271 Cal.App.2d 282, 286 [76 Cal.Rptr. 572].) Factually Cooper did set up a substantial defense to the complaint. Early in her written communication to the court she contended in substance that she did not intend a present transfer of any of her interest in the painting to Burke by virtue of the bill of sale. She pointed to the obvious fact that the bill of sale affected a number of cherished items in her home and for the bill of sale to be effective during her lifetime would be a catastrophe, would strip her of "all of [her] needed belongings." She further asserted (and testified) that because her conditions set forth in the bill of sale were not met, no present transfer occurred. Cooper sets up what may very well be a substantial defense to the complaint. She should be permitted to have her day in court on these issues tendered.

As Cooper's motion was made more than six months after the default was entered, it was not directed to the court's statutory power to grant relief for mistake or excusable neglect under Code of Civil Procedure section 473 nor was it as we have noted authorized under the power of a court to amend and control process and orders as granted by Code of Civil Procedure section 128, subdivision 8, for such power is limited to the exercise of correction of clerical errors. Such powers under section 128, subdivision 8, are inherently necessary for a court to make its judgment speak the truth and insure that its orders are carried out in the manner that conforms to justice and the court's intention. (*Bloniarz* v. *Roloson, supra*, 70 Cal.2d 143, 148.) They do not include the consideration of extrinsic factors that invoke the jurisdiction of a

court of equity for extrinsic mistake that may have deprived one party of a fair adversary hearing. We conclude that Cooper has made the showing necessary to invoke the equitable powers of the trial court and the trial court in exercise of a most wise discretion set aside the default and judgment here entered.

Judgment affirmed.

Brown, (Gerald), P. J., and Cologne, J., concurred.