[No. AO18561. First Dist., Div. Five. Jan. 19, 1984.]

COLLEEN BELLM, Plaintiff and Respondent, v.
CHARLES BELLIA et al., Defendants and Appellants.

**COUNSEL**

Curt J. Cooper and Beatrice Taines for Defendants and Appellants.

Allen Law Corporation and Gary H. Gale for Plaintiff and Respondent.

**OPINION**

**KING, J.**—Charles Bellia and C.B.A., Inc. (Bellia) appeal from a default judgment in favor of Colleen Bellm and an order denying Bellia's motion to set aside the default judgment. We affirm the judgment and order.

On October 30, 1981, Bellm filed a complaint against Bellia, seeking to recover commissions allegedly due her as a salesperson. The summons and complaint were served on November 13, 1981. Bellia filed no answer. Counsel for Bellm represented another person who had sued Bellia, and had periodic communications with counsel for Bellia concerning discovery matters in that case, but did not notify counsel of the present action against Bellia or the impending default. Bellia's default was entered on December 28, 1981. On January 18, 1982, Bellia moved to set aside the default. The court denied the motion. A default hearing was held and judgment for Bellm was entered in the amount of $35,134.52 plus costs of $12,750 and interest.

■ Bellia contends that the trial court abused its discretion when it denied his motion to set aside the default, because he made a showing of excusable neglect justifying relief from the default under Code of Civil Procedure section 473. Bellia alleged in declarations in support of the motion that after he was served with the summons and complaint he forgot about the matter because of the business pressures of the Christmas season ("I was 'buried over my head' in sales orders") and because of the serious illness of his father (who died on Mar. 9, 1982) and recent death of his mother after a long illness on July 29, 1980.

The only allegations that Bellia made regarding the *effect* of these factors, however, were that his parents' illnesses and deaths "were very trying to me" and that business pressures "caused me to forget about being served with Bellm's complaint." It was not an abuse of discretion for the trial court to reject these claims as insufficient to justify setting aside the default. The press of business is not a sufficient excuse for failing to respond to service of a summons and complaint. (*Davis* v. *Thayer* (1980) 113 Cal.App.3d 892, 909 [170 Cal.Rptr. 328]; *Andrews* v. *Jacoby* (1919) 39 Cal.App. 382, 383-384 [178 P. 969].) Bellia did not allege that his parents' illnesses occupied any amount of his time or that he was too distraught to think about Bellm's complaint. (*Davis* v. *Thayer, supra,* 113 Cal.App.3d at p. 909.) Denial of relief from the default was perhaps a harsh measure, but Bellia's showing of excuse was not strong enough to require relief as a matter of law.

■ Bellia also contends that counsel for Bellm should have given notice of the impending default to the attorney who represented Bellia in the other case in which the two attorneys were adversaries. While as a matter of professional courtesy counsel should have given notice of the impending default, and we decry this lack of professional courtesy (cf. *Nicholson* v. *Rose* (1980) 106 Cal.App.3d 457, 463 [165 Cal.Rptr. 156]), counsel was under no legal obligation to do so. (*Turner* v. *Allen* (1961) 189 Cal.App.2d 753, 758 [11 Cal.Rptr. 630]; *Taliaferro* v. *Bekin Realty Co.* (1959) 176 Cal.App.2d 240, 242 [1 Cal.Rptr. 385].) By taking a default without giving notice, counsel took the risk that the trial court would grant relief from the default (*Pearson* v. *Continental Airlines* (1970) 11 Cal.App.3d 613, 619 [89 Cal.Rptr. 853]), but the failure to notify did not *require* the court to grant relief. No abuse of discretion is evident.

The judgment and the order denying the motion to set aside the default judgment are affirmed.

Low, P. J., concurred.

**HANING, J.**—I respectfully dissent. The policy of the law is to favor a hearing on the merits, particularly where it appears a defense could be

made. (*Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 854 [48 Cal.Rptr. 620, 409 P.2d 700]; *Baske* v. *Burke* (1981) 125 Cal.App.3d 38, 43 [177 Cal.Rptr. 794].) "Rigid rule following is not always consistent with a court's function to see that justice is done." (*Kapitanski* v. *Von's Grocery Co.* (1983) 146 Cal.App.3d 29, 32 [193 Cal.Rptr. 839].) There is no dispute that Mr. Bellia's attorney acted promptly when notified his client had been served. While Mr. Bellia obviously did not act as promptly as he should have, his declaration shows that his father was dying of cancer at the time and this contributed to his neglect. It is true that he was also under the press of business, but he contends that his father's illness (his father subsequently died) coming shortly after his mother's death, was also a factor contributing to his failure to contact his attorney earlier. He was an only child, and his parents were dependent on him for support. His declaration shows he has a legitimate defense to offer. It appears the trial court emphasized the press of business at the expense of Mr. Bellia's family problems.

Another factor in this case is equally disturbing. Plaintiff's attorney knew Mr. Bellia had legal counsel in connection with another case in which plaintiff's attorney was also suing Mr. Bellia on behalf of another client. Yet, plaintiff's attorney never contacted nor notified Mr. Bellia's attorney, and never advised the court that Mr. Bellia might be represented by counsel. An attorney is an officer of the court, and in presenting matters to the court may employ only such means as are consistent with the truth, and may not mislead the court in any fashion. (Bus. & Prof. Code, § 6068, subds. (b) and (d); rule 7-105 (1), Rules Prof. Conduct.) This obligation requires the attorney to render a complete and candid disclosure—not merely relate only those facts which the attorney deems to be helpful to the cause for which he or she is retained. (See *Mosesian* v. *State Bar* (1972) 8 Cal.3d 60 [103 Cal.Rptr. 915, 500 P.2d 1115].)

Rule 7-103 of the Rules of Professional Conduct prohibits an attorney from any communication, direct or *indirect,* with a party known to be represented by counsel. In *Abeles* v. *State Bar* (1973) 9 Cal.3d 603 [108 Cal.Rptr. 359, 510 P.2d 719] and *Mitton* v. *State Bar* (1969) 71 Cal.2d 525 [78 Cal.Rptr. 649, 455 P.2d 753], our Supreme Court has made it clear that the purpose of the rule is to protect the client. While we are not dealing here with a communication, we are dealing with a situation where a default judgment was taken against a party by an attorney who knew the defaulting defendant had legal representation. The obligation of an attorney to maintain the integrity of the judicial system and the legal profession (*Hamilton* v. *State Bar* (1979) 23 Cal.3d 868, 879 [153 Cal.Rptr. 602, 591 P.2d 1254]) is ill served by such conduct. "Counsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court

in avoiding error and in determining the cause in accordance with justice and the established rules of practice." (*Furlong* v. *White* (1921) 51 Cal.App. 265, 271 [196 P. 903].)

I believe the action of the trial court was an abuse of its discretion and would reverse.

A petition for a rehearing was denied February 8, 1984. Haning, J., was of the opinion that the petition should be granted. Appellants' petition for a hearing by the Supreme Court was denied March 14, 1984.