Filed 4/15/13  Park v. Help U Build CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| WAYMAN PARK, | B239446 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VC057438) |
| v. | |
| HELP U BUILD et al., | |
| Defendants; | |
| JOSEPH TRENK, | |
| Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert J. Higa, Judge.  Affirmed.

Joseph Trenk, in pro. per., for Objector and Appellant.

Law Offices of Dilip Vithlani, Dilip Vithlani; Law Offices of Maria Puente-Porras, Maria Puente-Porras for Plaintiff and Respondent.

No appearance for Defendants.

_____

Attorney Joseph Trenk appeals from the denial of his motion for relief or reconsideration. (Code Civ. Proc., §§ 473, 1008.)[1] Trenk was ordered to pay $12,000 in attorney fees to plaintiff's counsel after admittedly neglecting his duty to defend his clients and allowing a default judgment to be entered against them. On appeal, he argues that (1) he had no notice of the hearing at which the court vacated the default judgment based on Trenk's "attorney affidavit of fault," and (2) the fee awarded is excessive. We find no abuse of discretion and affirm.

## FACTS

### *Events Leading To This Lawsuit*

Plaintiff Wayman Park is a retiree who lives in Bellflower. In 2010, defendant Help U Build (HUB) offered Park a free estimate for construction repairs. Based on HUB's promises to do excellent work and obtain building permits, Park signed a $4,300 contract to repair his kitchen floor. One day later, the HUB representative convinced Park that the entire kitchen needed remodeling and induced him to sign a contract for $34,590. Two weeks later, HUB claimed that the home was re-piped with copper and had passed city inspection.

Park's granddaughter went to city hall to inquire about the inspection, only to learn that HUB never applied for a permit. City inspectors went to Park's home. When workers there failed to show a permit, the inspectors demanded that they leave the premises. Park discovered that the old piping was still in place and that work done elsewhere in the house was substandard. Park obtained bids for $37,200 and $39,500 to demolish HUB's work and repair the damage.

### *Park Files Suit and Defendants Default*

Park sued HUB and its president Ron Galam, who were served with the summons and complaint on November 5, 2010. Sefora Construction was added as a Doe defendant soon after. Appellant Trenk represented the defendants. After serving the lawsuit,

---

[1]     Statutory references in this opinion are to the Code of Civil Procedure.

2

plaintiff propounded discovery and tried to schedule depositions. Trenk requested an extension of time to answer the complaint and the discovery, and was given until January 14, 2011: on that date, plaintiff's counsel wrote to remind Trenk that the answer and discovery responses were due. As a courtesy, he extended the due date to January 20. Trenk did not respond to counsel's letter.

On February 7, 2011, plaintiff filed notices of defaults against defendants. Plaintiff's counsel warned Trenk in writing about the defaults, and sent him copies. Trenk did not respond to counsel's letter. The court clerk entered the defaults March 18, 2011. Plaintiff asked the trial court to render judgment in his favor, based on declarations detailing defendants' conduct. On May 10, 2011, the court entered judgment against HUB, Galam and Sefora. The judgment imposed $37,819 in economic damages; $10,000 for violating state law; $10,000 in punitive damages; $9,800 in attorney fees; $3,046 in prejudgment interest; and $995 in court costs.

### *Defendants Seek Relief from the Default Judgment*

Defendants moved to set aside the judgment in July 2011, blaming the default on Trenk's dereliction of duty. Trenk submitted an affidavit of fault in which he acknowledged receipt of letters from plaintiff's counsel, reminding him that answers to the complaint and discovery were due and warning that a default would be taken. Trenk declared that "[d]ue to mistake, inadvertence and excusable neglect I failed to file any responsive pleadings and also failed to respond to discovery responses when they were due. Moreover, I failed to advise the clients that a default was sought by Plaintiff's counsel against them, failed to advise the clients that a default was in fact entered against them and also failed to advise the client[s] of the default judgment that was entered against them." In May 2011, Trenk was suspended from the practice of law; thereafter, he advised defendants of his suspension, of the judgment against them, and of his inability to assist them.

At a hearing on September 15, 2011, the court deemed it "mandatory" to set aside the default under section 473, due to Trenk's declaration admitting fault. The court added, "I'm going to impose attorneys fees that he's going to have to pay. I think the

3

Code is pretty clear about that also." The court awarded attorney fees and costs of $12,000 to plaintiff, payable by Trenk. Trenk did not attend the hearing.

On September 19, 2011, defendants' new attorney served a notice of ruling on Trenk, stating that Trenk was ordered to pay $12,000 within 30 days. For his part, plaintiff's counsel twice served Trenk with a proposed order awarding fees, on September 22 and October 13, 2011. Receiving no objections to the proposed order, plaintiff had the court sign the order on October 31, 2011. It states that the motion for relief from default is set aside based on Trenk's affidavit of fault, which entitles plaintiff to reasonable attorney fees of $12,000, payable by Trenk.

### *Trenk Moves to Set Aside or Reconsider the Order for Attorney Fees*

On December 8, 2011, Trenk filed a motion to set aside or reconsider the court's order for attorney fees. Trenk asserted that he had no notice of the hearing that led to the order and, as a result, did not participate in it. Trenk observed that he is neither a party to the action nor counsel for a party. His only connection was to voluntarily provide an affidavit of fault in support of defendants' motion to set aside the default. He was not served with the motion to set aside the default, and argued that he was not properly served with the court's October 31 order awarding fees.

In opposition, plaintiff argued that Trenk had notice of the court's intention to award fees. On September 29, Trenk acknowledged receipt of the proposed order awarding fees. Plaintiff re-served Trenk with the proposed order imposing fees on October 13, but waited until October 31 to file it with the court. During that time frame, Trenk raised no objections to the proposed award. Plaintiff submitted into evidence a proof of service showing that Trenk was served on November 1, 2011, with the court's signed order requiring him to pay fees.

At a hearing on January 23, 2012, Trenk argued that he had no notice or opportunity to dispute the attorney fees. Plaintiff countered that when Trenk submitted his affidavit of fault, he knew or should have known that attorney fees were mandated, so he should have appeared at the hearing on the motion to set aside the default. Trenk did not point to any portion of the fee award that is unreasonable or excessive. The court

4

denied Trenk's motion, noting that section 473 mandates a fee award when an attorney admits fault in causing a default that is later set aside.

## DISCUSSION

### 1. Jurisdiction

Plaintiff argues that this appeal must be dismissed as untimely. An untimely notice of appeal is an "absolute bar" to appellate jurisdiction. (*Delmonico v. Laidlaw Waste Systems, Inc.* (1992) 5 Cal.App.4th 81, 83.) This appeal was taken on February 21, 2012, from the trial court's January 23 denial of Trenk's motion to reconsider the fee order. The 29-day span between the ruling and the notice of appeal meets jurisdictional time limits. (Cal. Rules of Court, rule 8.104(a).)

Plaintiff contends that the order being appealed is, in reality, not the one denying Trenk's motion; rather, he identifies it as the order imposing attorney fees, entered on October 31, 2011. Plaintiff concedes that the time for appealing is extended if a party "serves and files a . . . valid motion [ ] to vacate the judgment" or "serves and files a valid motion to reconsider an appealable order." (Cal. Rules of Court, rule 8.108(c), (e).) He insists that Trenk's motion was not "valid" under rule 8.108 and did not extend the time to appeal.

A "valid" motion that extends the time for an appeal is one that "*complies with all procedural requirements*; it does not mean that the motion or notice must also be substantively meritorious." (*Branner v. Regents of University of California* (2009) 175 Cal.App.4th 1043, 1047.) A valid motion for reconsideration is one that is timely and contains a declaration in support of the motion. A valid motion to vacate is one that is brought on some recognized ground for a motion to vacate. (*Id*. at p. 1048; *Payne v. Rader* (2008) 167 Cal.App.4th 1569, 1574; *Ten Eyck v. Industrial Forklifts Co.* (1989) 216 Cal.App.3d 540, 545.)

A party may extend the time to appeal by making a statutory motion to vacate under sections 663 (judicial error) or 473 (judgment arising from mistake, inadvertence, surprise or neglect); the courts also recognize nonstatutory motions to vacate a judgment on equitable grounds. (Advisory Com. com., Deering's Ann. Codes, Rules (2013 supp.)

5

foll. rule 8.108, p. 104.) Trenk sought relief under section 473. He also invoked the trial court's "inherent equitable powers," citing "circumstances that deprive an adversary of fair notice of a hearing."

Plaintiff generously details the procedural deficiencies of Trenk's motion for reconsideration that render it invalid under rule 8.108: for one thing, reconsideration was sought long after the 10-day window for seeking reconsideration expired. (§ 1008, subd. (a).) However, plaintiff does not say why Trenk's statutory and nonstatutory requests for relief are procedurally deficient. Plaintiff offers neither legal authority nor argument demonstrating that Trenk's motion to vacate is invalid: their absence forfeits the issue. We have jurisdiction because Trenk's motion to vacate extended the time to appeal under California Rules of Court, rule 8.108(c).)

## 2. **Standard of Review**

The trial court's ruling denying relief under section 473 is reviewed for an abuse of discretion amounting to a manifest miscarriage of justice. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200.) Abuse of discretion is the standard for reviewing requests for equitable relief, but relief will be denied unless "the moving party is able to convince that court that he has exercised reasonable diligence to protect himself against the judgment." (*Daher v. American Pipe & Constr. Co.* (1968) 257 Cal.App.2d 816, 819.) Requests for relief may be addressed to the court's equitable powers when an aggrieved person claims that he was prevented from exhibiting his case due to fraud or deception practiced by his opponent to keep him away from court; or was kept in ignorance by the acts of the plaintiff; or others connived at his defeat. (*Estate of Sanders* (1985) 40 Cal.3d 607, 614; *Baske v. Burke* (1981) 125 Cal.App.3d 38, 43.)

## 3. **Denial of Relief**

### a. *Notice and Opportunity to Be Heard*

Trenk contends that he is entitled to relief from the court's attorney fee order because he was deprived of his due process rights. He writes, "There is no dispute between the parties that, with respect to the Motion to Vacate Default, Opposition thereto and hearing thereon, the Appellant was provided no notice of any such filing or hearing.

6

Everything that occurred with respect to Defendants' Motion to Vacate Default, occurred without the participation of Appellant nor any form of notice to him." As a result, he continues, "a judgment was entered against Appellant for the amount of $12,000.00, without any notice, hearing, or opportunity to be heard."

The record shows that, contrary to Trenk's claims, he knew of his former clients' motion. Indeed, Trenk submitted a declaration in support of the defense motion, admitting fault for failing to respond to the complaint or to discovery requests, for failing to advise his clients that notices of default were filed and entered, and for failing to tell his clients about the ensuing judgment. As a result of Trenk's admissions of fault, the trial court had to grant the motion to vacate the default judgment.

After vacating the default, the court was required to impose attorney fees on the attorney who was at fault. As a lawyer, Trenk must be presumed to have read section 473, the statute under which he submitted the affidavit of fault. Subdivision (b) of that statute states that if a court grants relief, "[t]he court *shall*, whenever relief is granted based on an attorney's affidavit of fault, *direct the attorney* to pay reasonable compensatory legal fees and costs to opposing counsel or parties." (Italics added.)

In his brief, Trenk admits that he "provided a declaration setting forth grounds for relief under the provisions of California Code of Civil Procedure § 473(b)." He does not dispute that relief from default was mandatory once he submitted a declaration of fault, nor does he dispute that the court had to direct him to pay compensatory legal fees to opposing counsel or to plaintiff, based on his declaration of fault. If Trenk failed to appear at the hearing on the motion to vacate—despite knowing that relief and attorney fees were mandatory—it was not because he was unaware of it. Rather, he did not appear because he did not exercise diligence to protect his interests.

After the September 15 hearing on defendants' motion to vacate, Trenk was served with (1) a notice of the court's ruling (September 19); (2) two proposed orders awarding fees (September 22 and October 13); and (3) a motion asking the court to issue a formal order requiring him to pay fees (October 31). At no point during September or October did Trenk object to the attorney fees sought by plaintiff or ask the court to

7

reconsider its ruling in a timely manner. Instead, Trenk treated the four notices of the $12,000 fee award in the same manner that he treated plaintiff's January 14 and February 7 letters warning of imminent default: he ignored them. His failure to state reasons for disapproving a proposed order prepared by the prevailing party is deemed to be an approval of the proposed order. (Cal. Rules of Court, rule 3.1312(a).)

In sum, Trenk knowingly acquiesced in a motion to vacate the default judgment that he admittedly caused. He submitted a declaration of fault in furtherance of that motion. He cannot claim ignorance of a motion in which his own declaration was the cornerstone. He cannot claim ignorance that the motion, if granted, would compel attorney fees that he, personally, would be required to pay. When given notice of the court's ruling, he failed to object to the proposed order or bring a timely motion for reconsideration. In light of Trenk's inaction, the court did not abuse its discretion by denying his motion to vacate because Trenk did, in fact, know what was happening, and participated in his former clients' motion to avoid being sued for legal malpractice.

### 2. *Amount of Fees*

Trenk contends that the provision of section 473 requiring him to pay "reasonable compensatory legal fees and costs" refers only to "activities related to the default." He believes the court should have allowed only the fees and costs incurred in connection with defendants' motion to vacate, which was $3,000.

A person who moves to set aside a judgment may be required to repay his opponent's legal fees and costs. The award may encompass the fees and costs associated with defending against the motion to vacate. The appellate court in *Vanderkous v. Conley* (2010) 188 Cal.App.4th 111 affirmed a trial court's award requiring the moving party "to reimburse [his adversary] the attorney fees and costs of $16,763 for proceedings in connection with the section 473 motion." (*Id.* at pp. 116, 118.) Apart from reimbursing the opposing party for the cost of responding to the motion to vacate, the moving party may also be required to pay "attorney fees and costs incurred in *obtaining* the defaults." (*Rogalski v. Nabers Cadillac* (1992) 11 Cal.App.4th 816, 823.) The trial

court is in the best position to determine what constitutes reasonable compensation. (*Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459, 1474.)

In this case, instead of moving with quiet stealth to snatch a default judgment from under Trenk's nose, plaintiff's counsel tried to work with Trenk. Plaintiff's counsel acceded to Trenk's request for extra time to answer the complaint and the discovery requests. When Trenk failed to respond by the extended due date, plaintiff's counsel wrote to Trenk, reminding him of his obligation. As a courtesy—without prompting—plaintiff's counsel gave Trenk six days more to live up to his duties. Trenk did nothing, even though plaintiff's counsel waited another 18 days to see if Trenk would react. Finally, plaintiff's counsel filed notices of default, and warned Trenk in writing about them: again, Trenk did nothing and the court clerk entered the defaults 39 days later.

Under the circumstances, the trial court could find that "reasonable compensatory legal fees and costs" includes the time plaintiff's attorney spent trying to save Trenk from a potential malpractice suit. Plaintiff's counsel made every effort to avoid the default judgment that ultimately ensued. He should be compensated for his efforts by Trenk, not by his own client, inasmuch as Trenk was the beneficiary of opposing counsel's professional courtesy. The trial court properly awarded fees for counsel's work leading up to the default and obtaining a default judgment at a prove-up hearing, as well as his work defending against defendants' motion to set aside the default judgment. All of this activity arose from Trenk's neglect of his duty to represent his clients. The award did not cover work plaintiff's counsel had to perform to resist Trenk's motion for relief, or his work responding to Trenk's appeal.[2]

---

[2] The last sentence of plaintiff's brief requests an award of attorney fees on appeal, but cites no basis for making such an award.

9

## **DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


                                      BOREN, P.J.

We concur:


CHAVEZ, J.


FERNS, J.*

_____

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.