Filed 2/25/16  Myers v. Cresson CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL MYERS et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> GEORGE CRESSON et al., <br><br> Defendants, Cross-Complainants and Appellants, <br><br> v. <br><br> LOANVEST XI, L.P. et al., <br><br> Cross-defendants and Respondents. | A142687 <br><br> (San Mateo County Super. Ct. No. CIV-518271) |

**I.**

**INTRODUCTION**

Plaintiffs, limited partners of Loanvest XI, L.P. (Loanvest), filed the underlying fraud case against the general partner of Loanvest, South Bay Real Estate Commerce Group, LLC (South Bay) and the manager of South Bay, George Cresson (Cresson). South Bay and Cresson (jointly the GP defendants) filed a cross-complaint for indemnification against Loanvest.  As the general partner of Loanvest, South Bay elected not to defend Loanvest against the cross-complaint.  But, after the GP defendants took Loanvest's default, the trial court set aside the default judgment on equitable grounds. The GP defendants seek review of the order setting aside the default judgment.  We hold that order is not appealable and therefore dismiss this appeal.

1

## II.

## BACKGROUND

### A. *The Complaint*

In November 2012, plaintiffs filed this action against the GP defendants, and against Sentinel Investment Management Company and its president Kenneth Miller (the broker defendants). In their operative first amended complaint, plaintiffs sought damages and equitable relief based on theories of fraud, breach of fiduciary duty and breach of contract.

Plaintiffs alleged, among other things, that Cresson and the broker defendants solicited them to become partners in a limited partnership that would make secured loans to qualified borrowers. In reliance on allegedly false representations, each plaintiff made substantial investments in and became limited partners of Loanvest. Plaintiffs alleged that, in executing the limited partnership agreement, they also relied on express and implied representations that Cresson would act as the general manager of Loanvest. Over the next several years, the GP defendants allegedly violated their duties to the limited partners by, among other things, making false representations about Loanvest's investments, and refusing to disclose material information about the operation and assets of the limited partnership.

Plaintiffs also alleged that the individual defendants, Cresson and Miller, were alter egos of and fully controlled their corporate counterparts, South Bay and Sentinel, and that "[a]dherence to the fiction of the separate existence of South Bay and Sentinel as a limited liability company or corporation, and as entities distinct from Cresson, Miller, and Does 1-20 would permit an abuse of the corporate privilege and would promote fraud and injustice by reason of the acts alleged" in the complaint.

In their respective answers to the complaint, Cresson and South Bay made general denials and alleged dozens of affirmative defenses, including that the conduct about which plaintiffs complain was a proper exercise of management discretion and was performed by the GP defendants solely in their capacities as agents for another entity.

**B. *The Cross-Complaint***

On November 5, 2013, the GP defendants' counsel, Mark Rushin, sent a letter to plaintiffs' counsel, Jeffrey Belote, in which Rushin purported to tender a demand to Loanvest to provide a defense for and indemnity to the GP defendants with respect to all of plaintiffs' claims. Rushin also gave notice to plaintiffs that South Bay had made a decision as the general partner of Loanvest that the GP defendants' demands for a defense and indemnity were "meritorious and that paying for a defense of these claims is not a prudent use of [Loanvest's] financial resources." Anticipating that plaintiffs might disagree with that decision, South Bay engaged a lawyer to provide Loanvest with a defense in the event that plaintiffs decided to pay for it. Rushin also warned the plaintiffs that "[w]ithout a prompt acceptance of the tender" from Loanvest, the GP defendants would file a cross-complaint against Loanvest, take its default, and proceed to judgment.

On November 26, 2013, the GP defendants filed a cross-complaint against Loanvest and against 10 ROE cross-defendants, whom the GP defendants described as individuals and entities whose true names are unknown but who owe the GP defendants a defense and indemnity obligations with respect to the claims in plaintiffs' complaint. The GP defendants then proceeded to allege causes of action against all cross-defendants without distinguishing Loanvest from the ROE cross-defendants whose names they claimed not to know.

General allegations in the cross-complaint included that South Bay is a limited liability company in good standing, and the agent of Loanvest, and that Cresson is the agent of South Bay and, therefore, a subagent of Loanvest. The GP defendants then purported to incorporate by reference the plaintiffs' complaint, without conceding the truth of any of plaintiffs' allegations. They alleged that all actions they took with respect to matters discussed in the underlying complaint were within the scope of their agency relationship with Loanvest and the unnamed cross-defendants. With these general allegations, the GP defendants attempted to allege causes of action for common law indemnity, total equitable indemnity, partial equitable indemnity, and declaratory relief.

3

In support of their cause of action for declaratory relief, the GP defendants added this allegation:  "On information and belief, an actual controversy has arisen and now exists between Cross-Complainants and Cross-Defendants, and each of them, concerning their respective rights and duties.  Cross-Complainants contend, and on information and belief, Cross-Defendants deny, that in the event Cross-Complainants are held liable to Plaintiffs in this action, then Cross-Complainants will be entitled to be indemnified by each of the Cross-Defendants herein for the full amount of any loss suffered by, or judgment paid by Cross-Complainants, and for all other expenses which may be incurred by Cross-Complainants in defense of the claims of Plaintiffs, and in the pursuit of this Cross-Complaint."

In their prayer for judgment, the GP defendants sought the following:  (1) an order and declaration that the GP defendants are entitled to indemnification from all of the cross-complainants with respect to all of plaintiffs' claims; (2) "In the event that judgment is entered in favor of Plaintiffs, or any of them, herein, and against Cross-Complainants, that judgment be entered in the same amount in favor of Cross-Complainants and against the Cross-Defendants, and each of them"; and (3) damages including fees and expenses incurred in the defense of plaintiffs' claims and in connection with the cross-complaint.

## C. *The Default Judgment*

On December 31, 2013, the GP defendants filed a request for entry of default on the cross-complaint against Loanvest, with a proof of service indicating the request was served on plaintiffs.  On January 2, 2014, the superior court clerk entered default against Loanvest.

On April 8, 2014, the GP defendants filed a request for court judgment against Loanvest, which was served on plaintiffs.  That same day, the GP defendants requested that a "prove up" hearing be scheduled on the court's calendar for uncontested matters, and obtained a hearing date of April 15, 2014.  The GP defendants did not notify plaintiffs that a prove-up hearing had been requested and scheduled.

4

The record does not contain a transcript of the prove-up hearing, but it does contain a declaration from Cresson that was executed and filed on April 15, 2014, the date the hearing took place. In his declaration, Cresson represented to the court that (1) South Bay is the general partner of Loanvest and (2) Cresson is the manager of South Bay. Cresson also stated: "I have reviewed the First Amended Complaint, filed on July 10, 2013 by Plaintiffs. All of the actions alleged in the complaint against me and South Bay are actions that we took as part of South Bay's agency relationship with Loanvest and my sub-agency relationship with Loanvest. South Bay was acting as an agent of Loanvest. I was acting as an agent of South Bay and a sub-agent of Loanvest," and "[a]s our principal, Loanvest XI, LP owes a duty to indemnify South Bay and me for any current and future judgments."

On April 15, 2014, the Honorable Don Franchi signed a proposed judgment that had been drafted by the GP defendants' counsel. That judgment (the Loanvest default judgment) provides:

"1.     With respect to claims asserted in [the] Cross-Complaint, Loanvest owes a duty of defense and indemnity to Cross-Complainants South Bay and Cresson. Therefore, Cross-Complainants are entitled to be indemnified and held harmless from all of the claims of the Plaintiffs.

"2.     In the event that judgment is entered in favor of Plaintiffs, or any of them, herein and against Cross-Complainants or either of them,  judgment shall be entered in the same amount in favor of Cross-Complainants and against Loanvest.

"3.     Loanvest shall pay all costs, expenses and attorneys' fees incurred in defense of Plaintiffs' claims by Cross-Complainants and any fees and costs incurred after that date shall he added to this judgment on a motion filed by Cross-Complainants."

**D.** *The Order Setting Aside the Default Judgment*

On May 19, 2014, plaintiffs filed a motion to set aside the Loanvest default judgment, arguing, among other things, that it was procured by fraud because the GP defendants misled the court about the pertinent facts. Furthermore, plaintiffs argued they were denied the opportunity to demonstrate to the court that the cross-complaint was a

5

sham because the GP defendants did not give them notice of the prove-up hearing where they convinced the court to sign the Loanvest default judgment.

In support of their motion, plaintiffs outlined pertinent facts that Cresson failed to disclose in the declaration that he submitted at the prove-up hearing. Specifically, Cresson did not advise the court that: "(1) all equity in Loanvest was put there by the Limited Partners alone, and Plaintiffs own a 65% interest; (2) only South Bay had the authority to act on behalf of Loanvest, and Cresson controlled South Bay; (3) South Bay and Cresson tendered their defense to Loanvest and then proceeded to abandon Loanvest by refusing to pay counsel to defend it against their own Cross-Complaint, for the obvious purpose of obtaining a judgment against Loanvest's assets (in which Plaintiffs have a 65% interest); and (4) the terms of the Limited Partnership Agreement prohibited the Limited Partners (including Plaintiffs) from retaining counsel to defend Loanvest or taking any action on behalf of Loanvest." (Italics omitted.)

Plaintiffs' motion was also supported by a declaration of counsel and numerous exhibits which included the pertinent pleadings, the November 5, 2013 letter purporting to tender the GP defendants' indemnity claims to Loanvest, and the limited partnership agreement.

The GP defendants opposed the motion to set aside the Loanvest default judgment on the grounds that (1) plaintiffs lacked standing to bring the motion because they are not parties to the cross-complaint;[1] (2) the GP defendants are entitled to indemnity from Loanvest; and (3) plaintiffs had "repeated notice of this issue" and failed to act, thereby waiving their right to challenge the Loanvest default judgment.

On June 18, 2014, the Honorable Lisa Novak held a hearing on the motion to set aside the Loanvest default judgment. Prior to the hearing, the parties were informed of the court's tentative ruling to grant the motion, which the GP defendants challenged. Defense counsel argued that the GP defendants made a sound business decision not to

---

[1] Plaintiffs were not named in the cross-complaint. However, it appears they are the ROE cross-defendants whose "true names" the GP defendants claim not to know.

6

oppose the cross-complaint and that they did not breach any fiduciary duties. Counsel argued that, putting aside the underlying claims of fraud and breach of fiduciary duty, there was nothing untoward about the cross-complaint which would justify setting aside "a properly obtained judgment that [plaintiffs'] had every opportunity to come in and protest prior to the time judgment was entered."

In response to these arguments, the trial court found that (1) plaintiffs did not have the opportunity to protest entry of the Loanvest default judgment; (2) the GP defendants' actions in filing the cross-complaint and then refusing to defend it were "abundantly unfair," and (3) the cross-complaint should be stayed pending resolution of the complaint in light of the nature of plaintiffs' underlying claims against the GP defendants. At the conclusion of the hearing, the trial court signed a proposed order which incorporated its tentative rulings and added a provision staying the cross-complaint (the April 2015 order).

The April 2015 order contains the following pertinent findings: (1) the GP defendants' actions in filing the cross-complaint against Loanvest, failing to provide a defense for the partnership, and then obtaining a default judgment against the partnership constituted breaches of the fiduciary duties "owed to the partnership and the limited partners, including [p]laintiffs"; (2) the GP defendants also breached their fiduciary duties by failing to give plaintiffs notice of the prove-up hearing; (3) plaintiffs had standing in their capacity as limited partners to file a motion to set aside the Loanvest default judgment because the general partner failed to do so; and (4) under the terms of the limited partnership agreement, the obligation to defend the cross-complaint rested solely with the general partner, and, indeed, plaintiffs were prohibited from providing that defense.

### III.
### DISCUSSION

The GP defendants contend that the April 2015 order is appealable as an order after judgment, pursuant to Code of Civil Procedure section 904.1, subdivision (a)(2).

7

Plaintiffs contend the order is not appealable because the underlying Loanvest default judgment was an interim judgment.**²**

An order vacating a default judgment is appealable as an order after a final judgment. (E.g., *County of Stanislaus v. Johnson* (1996) 43 Cal.App.4th 832, 834 [statutory motion to vacate]; *Baske v. Burke* (1981) 125 Cal.App.3d 38, 43 [nonstatutory motion to vacate].) However, this rule only applies when the underlying judgment is a final judgment as opposed to an interim judgment. (*Neilsen v. Saylors* (1956) 146 Cal.App.2d 139, 140; see also *Misic v. Segars* (1995) 37 Cal.App.4th 1149, 1154.)

The requirement that the underlying judgment must have been a final judgment is an application of the "one final judgment rule," which is itself "a fundamental principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case. 'The theory is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.' [Citations.]" (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697.)

A judgment is a final judgment " ' " 'when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.' " ' [Citation.] ' "It is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.' " [Citation.]' " (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5, italics omitted.)

---

**²** The question whether the April 2015 order is appealable was raised in the plaintiffs' opposition brief and addressed in the GP defendants' reply brief. Therefore, the issue is properly before us without the need for further briefing.

In this case, the Loanvest default judgment stated: "In the event that judgment is entered in favor of Plaintiffs, or any of them, herein and against Cross-Complainants or either of them, judgment shall be entered in the same amount in favor of Cross-Complainant against Loanvest." This conditional language establishes that the Loanvest default judgment was interlocutory rather than final because the relief it afforded to the GP defendants was dependent on a future event that may or may not happen.

Furthermore, if the future event contemplated in the Loanvest default judgment were to occur, that judgment did not specify the amount of money damages that the GP defendants could recover from Loanvest, but instead provided that such amount would have to be determined at some future date. "It is the general rule that a judgment must be sufficiently certain to permit enforcement. While some uncertainties may be eliminated or resolved by reference to the pleadings [citation], that will not save a judgment for money which fails to specify the amount. [Citation.]" (*Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 185.)

Despite these circumstances, the GP defendants contend the Loanvest default judgment constituted a final judgment because "it will be easily ascertainable what relief has been granted when judgment is entered in the main action." They also argue that the fact that the Loanvest default judgment provides for entry of judgment at a future date does not "change the character of the Judgment or make it interlocutory and nonappealable." We disagree with these arguments, neither of which is supported by citation to authority or by any reasoned analysis.

The GP defendants' only substantive contention is that the Loanvest default judgment should be deemed a final judgment because it resolved all of the claims that the GP defendants alleged against Loanvest. In making this argument, the GP defendants (1) characterize the cross-complaint as a declaratory relief action and then (2) construe

9

the judgment as a declaration of the rights of the parties which is enforceable as a final judgment under Code of Civil Procedure section 1060 (section 1060).[3]

First, the cross-complaint contained four causes of action, only one of which was for declaratory relief. Thus, to the extent the Loanvest default judgment pertained only to a single cause of action, it was not a final disposition of the GP defendants' claims against Loanvest. Second, and in any event, the Loanvest default judgment cannot properly be construed as a declaratory relief judgment.

" ' "[D]eclaratory relief is appropriate only where there is an actual controversy, not simply an abstract or academic dispute." [Citations.]' [Citation.] 'The "actual controversy" language in Code of Civil Procedure section 1060 encompasses a probable future controversy relating to the legal rights and duties of the parties. [Citation.] For a probable future controversy to constitute an "actual controversy," however, the probable future controversy must be ripe. [Citations.] A "controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." [Citation.]' [¶] Whether a claim presents an "actual controversy" within the meaning of Code of Civil Procedure section 1060 is a question of law that we review de novo.' [Citation.]" (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 606, italics omitted (*County of San Diego*)); see also *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 539.)

---

[3] Section 1060 states, in pertinent part: "Any person interested . . . who desires a declaration of his or her rights or duties with respect to another, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."

Here, the Loanvest default judgment was not a final declaratory relief judgment because the GP defendants failed to allege, not to mention prove, that there was an actual controversy between the GP defendants and Loanvest.

The cross-complaint contains allegations that any actions by the GP defendants with respect to matters alleged against them in the complaint were undertaken as agents of Loanvest. But it does not allege any facts to establish an actual controversy with Loanvest regarding the GP defendants' right to indemnity for acts that were undertaken as agents of Loanvest. Instead, the GP defendants alleged only that "[o]n information and belief an actual controversy has arisen and now exists between Cross-Complainants and Cross-Defendants, and each of them, concerning their respective rights and duties." Arguably, this cryptic allegation refers to the controversy in the complaint that was incorporated by reference into the cross-complaint. But that underlying controversy (1) is between the GP defendants and plaintiffs, not between the GP defendants and Loanvest; and (2) pertains to whether alleged conduct by the GP defendants was in fact undertaken as agents of Loanvest, which is a distinct issue from whether Loanvest must indemnify its agents.

Furthermore, as best we can tell from the record that the GP defendants have filed in this court, the only evidence produced at the prove-up hearing was Cresson's declaration. Like the cross-complaint, Cresson's declaration did not assert substantive facts that showed an actual controversy between the GP defendants and Loanvest. Instead, that declaration provided incomplete information about the relationship among these parties which created a misleading impression about the nature of the dispute that is driving this litigation and the parties involved in that dispute. The GP defendants cannot sidestep their actual controversy with the plaintiffs by obtaining a default judgment based on a manufactured controversy with Loanvest.

Finally, to the extent the GP defendants intended for their declaratory relief cause of action to allege that an actual controversy is certain to arise in the future, the record clearly demonstrates that any future controversy with Loanvest about the GP defendants' indemnity rights is not sufficiently ripe to support a default judgment at this point in this

11

litigation. The resolution of that potential controversy necessarily depends on the outcome of the underlying complaint which will establish what the GP defendants did and whether they acted within their agency as they contend in their cross-complaint. Thus, the facts regarding the GP defendants' right to indemnity from Loanvest have not " ' "sufficiently congealed to permit an intelligent and useful decision to be made." [Citation.]' " (*County of San Diego*, *supra*, 164 Cal.App.4th at p. 606.)

For all these reasons, we conclude that the Loanvest default judgment was an interim decision, based on incomplete and misleading information, which was set aside once the relevant facts were presented to the trial court. Accordingly, the April 2015 order setting aside the interim judgment is not appealable.

## IV.

## DISPOSITION

The appeal is dismissed. Plaintiffs are awarded their costs on appeal against the GP defendants in their individual and personal capacities.

_____
RUVOLO, P. J.

We concur:


_____
REARDON, J.


_____
RIVERA, J.


A142687, *Myers v. Cresson*

13