Filed 11/21/25  In re G.Y. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re G.Y., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.B.,<br><br>Defendant and Appellant. | F089377<br><br>(Super. Ct. No. JD141956-01)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Laura D. Pedicini, under appointment by the Court of Appeal, for Defendant and Appellant.

Kendra L. Graham, Interim County Counsel, and Raymond J. Aubele, Jr., Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Appellant S.B. (mother) is the mother of G.Y. (the child), who is the subject of this dependency case. This is mother's second appeal in this matter. In her first appeal, this court conditionally reversed the juvenile court's order on August 11, 2023, terminating mother's family reunification services, and ordering a permanent plan of placement with a fit and willing relative for the child and his sibling, D.B. (*In re D.B. et al.* (July 24, 2024, F086914) [nonpub. opn.] (*D.B. et al.*).) This court agreed with the concession of the Kern County Department of Human Services (department) that the court and the department failed to comply with the duty to inquire under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.). Specifically, this court determined the department failed to document any inquiry of the child's father, paternal aunt, paternal grandmother, and maternal grandmother.

After remand, the department made further efforts to inquire of the child's father and extended family members. On October 7, 2024, the juvenile court found ICWA was not applicable after considering the department's additional inquiry. Thereafter, a Welfare and Institutions Code section 366.26[1] hearing was set to determine a new permanent plan for the child. Mother's parental rights were subsequently terminated on February 13, 2025.

In the instant appeal, mother appeals from the juvenile court's order terminating parental rights. Mother contends that the juvenile court erred in finding there was no reason to know the child was an Indian child. The agency contends mother forfeited any claim of error by virtue of her failure to object at the hearing on remittitur. We affirm.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

2.

# FACTUAL AND PROCEDURAL BACKGROUND[2]

## I.      Facts and Procedural Background Prior to First Appeal.[3]

In April 2021, the department filed dependency petitions alleging the child and his four siblings were described by section 300, subdivision (b)(1).[4]  The allegations involved mother's failure to supervise and provide adequate food, shelter, and medical treatment for the child and her siblings (collectively, the children).  The conditions of mother's home were described as filthy with a foul odor and roaches crawling throughout the home.  The agency's detention report identified Harold Y. (father) as the alleged father of the child, and his whereabouts were unknown to the department.

On April 6, 2021, mother filed a "Parental Notification of Indian Status" form (ICWA-030), which indicated that one or more of her parents, grandparents, or lineal ancestors were members of a federally recognized tribe.  At the detention hearing held on April 16, 2021, mother was present and appointed counsel.  "The juvenile court inquired of mother regarding potential Indian ancestry, and she responded, 'I was told that I'm part Indian.'  She also stated that she did not 'know anything about what part of India or any of that.'  Mother explained that she would need to follow up with … [her mother,] Lisa [] to obtain additional information on her ancestry.  The department was ordered to contact [Lisa] using the phone number provided by mother.  The court reserved its finding as to ICWA and detained the children from mother's custody.  A combined

---

**2**      The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

**3**      The following facts are primarily taken from our previous opinion in *D.B. et al.*, *supra*, F086914, and the department's request for judicial notice of the nonpublished opinion in *D.B. et al.* is hereby granted.

**4**      We also grant appellant's request for judicial notice of both the augmented clerk's transcript and nonaugmented clerk's transcript from a prior appeal involving only the child's sibling, D.B.  (*In re D.B.* (June 3, 2025, F088924) [nonpub. opn.] (*D.B.*).)  These records are necessary and relevant due to the shared procedural history of the dependency cases involving G.Y. and D.B.

jurisdiction and disposition hearing was set for April 16, 2021." (*D.B. et al.*, *supra*, F086914.)

The department's jurisdiction report, dated April 14, 2021, recommended the allegations of the original petition be found true. A social worker followed up with mother about her knowledge of Indian ancestry on April 8, 2021. Mother claimed she heard that her family had Cherokee ancestry when asked to identify a tribe, but she also stated, " 'I don't know.' "

On April 22, 2021, the child's maternal grandmother, Lisa, told the social worker that mother's Cherokee ancestry was only one percent. Lisa denied that any of her family members were members of a tribe, born on tribal land, or receiving benefits from a tribe. The identity of the specific Cherokee tribe was unknown to Lisa. Lisa's deceased grandmother, Dorothy R., was identified as the individual that informed her of possible Cherokee ancestry in their family. The ancestry came through Lisa's mother, L.S., and she had no relationship or information about her biological father, Harold B. Lisa had no contact information for her mother, but she also provided the name of another deceased grandmother. There was no Indian ancestry on the maternal grandfather's side. Lisa believed their Indian ancestry was too remote to be discovered.

The initial jurisdiction and disposition hearing was continued to allow counsel for a sibling's father to prepare for the hearing.[5] At a continued jurisdiction and disposition hearing held on April 29, 2021, father was present through audio and video communication. His counsel filed a "Parental Notification of Indian Status" form on his behalf, which indicated that he may be a member of a tribe or is eligible for membership in the Cherokee tribe.

---

[5]     Appellant's request for judicial notice of the reporter's transcript from the appeal regarding the child's siblings is granted. (*In re C.B. et al.* (Feb. 11, 2025, F088316) [nonpub. opn.] (*C.B. et al.*).) The reporter's transcripts from *C.B. et al.* includes hearings from proceedings for the child that are not contained in the present record.

The juvenile court inquired of father's claim of Cherokee ancestry, and he asserted that his paternal grandmother, B.Y., informed him of the possible ancestry. The paternal grandmother was deceased, and he was unsure if his father would be able to remember anything about the family's ancestry. His paternal aunts, Diane Y. and Melissa Y. were identified as individuals that may have additional information, but he only had contact information for his "middle aunt," Melissa, through a social media website. The juvenile court inquired if there were any other family members having information about his Cherokee ancestry, and father responded, "No." A finding on father's ICWA status was reserved for the department to follow up on the information provided in court.

In August 2021, the children's newborn sibling, C.B., was taken into protective custody shortly after her birth. During the juvenile court's inquiry at C.B.'s detention hearing, mother denied that she had any Indian ancestry. The department's counsel indicated that there was a previous finding that ICWA was not applicable as to mother in the children's case. The court then found that ICWA was not applicable to C.B. as to mother. (*D.B. et al.*, *supra*, F086914.)

The allegations of the original petition were found true on September 17, 2021. On October 8, 2021, the juvenile court elevated father to presumed father status for the child and his two siblings C.B. and A.Y. At the continued disposition hearing on November 4, 2021, the child and siblings were placed with mother under a plan of family maintenance services.

In February 2022, the department filed supplemental petitions pursuant to section 387 alleging the previous disposition of placement with mother was ineffective in protecting the child and his siblings. The petitions alleged that mother's home was covered in trash, old food, toys, clothing, and dirt. The department also filed a subsequent petition pursuant to section 342 alleging the child was described by section 300, subdivision (b)(1) due to mother's untreated mental illness.

Mother was present for the detention hearing on the supplemental and subsequent petitions held on February 17, 2022. Father was not present for the hearing, but he was incarcerated at a facility in Maryland. The children were detained from mother's custody, and a combined jurisdiction and disposition hearing on the petitions was scheduled for April 11, 2022.

The department's jurisdiction report, dated March 23, 2022, recommended that the allegations in the supplemental and subsequent petitions be found true. The disposition report, dated March 24, 2022, recommended that the children remain in out-of-home care with family reunification services provided to mother. (*D.B. et al.*, *supra*, F086914.) A family finding social worker had located the child's paternal grandfather, H.Y., and maternal grandmother, Lisa, who were both interested in placement of the children. However, H.Y. subsequently withdrew his request due to health reasons.

At the jurisdiction hearing on the petitions held on April 11, 2022, the juvenile court found the allegations in both petitions to be true, and the disposition hearing was continued to May 24, 2022. A psychological evaluation was ordered for mother, and an additional continuance was necessary to allow the department to receive the report from mother's psychological evaluation. (*D.B. et al.*, *supra*, F086914.)

After a contested disposition hearing, the court ordered the children removed from mother's custody, and family reunification services were provided to mother. Family reunification services were not provided to father pursuant to section 361.5, subdivision (e)(1). A six-month review hearing was set for January 26, 2023.

On January 26, 2023, the six-month review hearing was continued, and the hearing was reset as a combined six- and 12-month review hearing on April 11, 2023. At the combined six- and 12-month review hearing, the juvenile court continued family reunification services for mother, and it set an 18-month review hearing for August 10, 2023.

On August 11, 2023, family reunification services were terminated for mother, and the juvenile court found that plans of adoption and guardianship were not suitable for the child. The child was ordered to remain in foster care with a permanent plan of placement with a fit and willing relative. A review hearing pursuant to section 366.3 was set for February 9, 2024. Mother filed a timely notice of appeal from the termination order on September 19, 2023.

**II.      Facts and Procedural Background After the First Appeal.**

The department's report for the section 366.3 review hearing recommended the child remain in his current permanent plan. The juvenile court ordered the child's permanent plan remain the same at the section 366.3 review hearing. A further review hearing under section 366.3 was set for August 9, 2024.

On June 5, 2024, the department filed a declaration in support of the ICWA inquiry regarding the child's sibling, D.B. The declaration detailed the department's inquiry of the child's maternal family. A "Notice of Child Custody Proceedings for Indian Child" (ICWA-030) form was sent to all federally recognized Cherokee tribes on April 26, 2024, on behalf of D.B. The notice included the full names and dates of birth for mother, D.B.'s father, maternal grandparents, maternal great-grandmother, maternal great-great-grandmother, and D.B.'s paternal grandmother. The full names of the maternal great-grandfather and maternal great-great-grandfather were provided with other biographical information listed as "unknown." An amended ICWA-030 form was sent to the tribes on June 5, 2024, due to an error in D.B.'s name.

On July 24, 2024, this court conditionally reversed the juvenile court's order terminating reunification services and remanded the matter back to the juvenile court for the limited purpose of allowing the juvenile court and the department to comply with the ICWA inquiry requirements, particularly as to the child's father, paternal relatives, and maternal grandmother. (*D.B. et al.*, *supra*, F086914.)

7.

The report for the section 366.3 review hearing, dated July 30, 2024, provided updated information on the department's efforts to inquire of the child's family regarding Indian ancestry. In March 2024, the social worker completed an additional inquiry of mother, and she denied there was any Indian ancestry in her family. Maternal grandmother, Lisa, was also contacted by the social worker, and she denied there was any Indian ancestry in her family. T.W., a maternal cousin, and M.W., a maternal great-aunt and full sibling to the maternal grandfather, each stated there was no Indian ancestry in their family. Attempts were made to contact the maternal grandfather and maternal uncle, but voice messages left by the department were not responded to.

The child was adamant in his refusal to participate in any form of communication with his parents. His current care providers expressed interest in obtaining legal guardianship, and the setting of a section 366.26 hearing was determined to be appropriate.

On August 8, 2024, the department filed a declaration detailing its past and recent efforts to inquire of the child's family members and contact tribes. In March 2024, the paternal grandfather reported Indian ancestry from his maternal great-grandmother, but he was not aware of the tribe's name. The child's paternal great-aunt, Diane Y., was identified by the grandfather as an individual with information on the possible ancestry. Diane disclosed Indian ancestry with the Cherokee tribe through her maternal great-grandmother, L.Y. The paternal grandmother also reported unknown Indian ancestry from her maternal grandmother.

Attached to the declaration was a copy of the ICWA-030 form sent to the Cherokee tribes, Bureau of Indian Affairs (BIA), and California Department of Social Services (CDSS) on behalf of the child for inquiry purposes. The form included the names and dates of birth for the child, parents, maternal grandparents, paternal grandparents, maternal great-grandmother, paternal great-great-grandparents, maternal great-great-grandmother, paternal great-great-great-grandmother, and paternal great-aunt.

8.

The form also identified the maternal great-grandfather and maternal great-great-grandfather with an unknown date of birth.

In response to the agency's inquiry, the Cherokee Nation and Eastern Band of Cherokee Indians submitted letters indicating the child was neither a member nor eligible for membership in their tribes. A response had not yet been received from the United Keetowah Band of Cherokee Indians, but the tribe had already provided letters indicating the child's full siblings were neither members nor eligible for membership in their tribe. The BIA acknowledged receipt of the inquiry and the department's request for assistance.

At the section 366.3 review hearing held on August 9, 2024, the juvenile court acknowledged receipt of the July 30, 2024, review report and declaration regarding ICWA inquiry. The court referenced the outstanding response from the United Keetoowah Band in relation to the agency's inquiry involving the child. Both parents entered a general objection without any further evidence or argument, and the court adopted the agency's recommendations. A section 366.26 hearing was set for December 6, 2024.

A supplemental declaration in support of the ICWA inquiry on behalf of D.B. was filed by the department on August 13, 2024. The declaration included all tribal letters in response to the department's inquiry. None of the responses indicated that D.B. was either a member or eligible for membership in their respective tribe. In a supplemental report, dated October 2, 2024, the department detailed its inquiry of maternal relatives to provide an update to the juvenile court after the remittitur was filed from the previous appeal.

A hearing after remittitur on appeal and continued section 366.26 hearing for the child's siblings were held on October 7, 2024. Both mother and father were not present, but their counsel were present. The juvenile court indicated that it had received and reviewed the department's declarations and reports in regard to the ICWA inquiry.

9.

Counsel for the agency submitted on the information contained in its reports and declarations, and a request was made for the court to make a finding regarding ICWA.

The court specifically identified its receipt of the department's June 5, 2024, ICWA declaration, August 13, 2024, ICWA declaration, and the October 2, 2024, supplemental report. The court then asked if any of the parties had an objection regarding ICWA. Mother's counsel and father's counsel each responded that they had no objection. The court proceeded to find there was no reason to find the child or her siblings were Indian children.

The section 366.26 report, dated November 20, 2024, recommended termination of parental rights and a plan of adoption for the child. The child, at seven years of age, had been placed with his current care providers since December 2023. The care providers were committed to a plan of adoption, and he was considered specifically adoptable. The ICWA status section of the report indicated that the juvenile court determined the child was not an Indian child on October 7, 2024.

The initial section 366.26 hearing was continued at mother's request. On February 3, 2025, mother filed a section 388 petition requesting the child be placed in her care under a plan of family maintenance. A combined section 388 and section 366.26 hearing was held on February 13, 2025. Mother was present and father was not present. Mother testified in support of her section 388 petition. After hearing argument from the parties, mother's section 388 petition was denied.

The court proceeded to the section 366.26 hearing, and the agency's counsel initially requested the juvenile court make an ICWA finding. The agency's counsel stated, "We did deal with that issue on appeal and the remittitur of the department did comply with the [Appellate] Court's instructions and have received no additional information." In response, the court found there was not a reason to know the child was an Indian child.

The court asked for the positions of the remaining parties in relation to the hearing. Mother's counsel entered an objection without further evidence, and the child's counsel submitted on the agency's recommendations. The court found the child was likely to be adopted and terminated parental rights. Mother filed a timely notice of appeal on February 18, 2025.

## DISCUSSION

Mother contends the juvenile court's finding that ICWA did not apply was not supported by substantial evidence because the department did not comply with its duty of inquiry. Mother argues that "key information" was not provided to the Cherokee tribes regarding the child's paternal family members.

**I.      Legal Principles.**

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)). An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

Under ICWA's state analogue, the California Indian Child Welfare Act (§ 224 et seq.) (Cal-ICWA), "courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child … is or may be an Indian child' in

11.

dependency cases." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125; § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).) The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (b)(1).) Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b)(2), 306, subd. (b).) The juvenile court has a duty at the first appearance of each parent to ask whether they "know or have reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The court must also require each parent to complete form ICWA-020. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the department or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e).) As recently clarified by the Legislature, a "reason to believe" exists when the court or the department "has information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (*Id*., subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the Bureau of Indian Affairs (BIA), the State

Department of Social Services, and the tribes and any other person who may have information.  (§ 224.2, subd. (e)(2)(A)–(C).)

The final duty component arises when the juvenile court or the department has " ' "reason to know" ' " the child is an Indian child.  (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.)  A "reason to know" exists if one of the following circumstances is present: "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d)(1)–(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an Indian child.  If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry.  (§ 224.2, subd. (i)(2).)

## II.    Standard of Review.

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' "  (*In re K.H.* (2022) 84 Cal.App.5th 566, 601 (*K.H.*), quoting § 224.2, subd. (i)(2).)  First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth

13.

in subdivision (d) of section 224.2 apply." (*Ibid.*) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…' " (*Ibid.*)

We review the juvenile court's finding that there is no reason to know whether a child is an Indian child under a substantial evidence standard, and the court's finding that the agency has conducted a proper and adequate inquiry and due diligence for abuse of discretion. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 600–601; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.) "On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes." (*K.H.*, at p. 589.)

Failures "to obtain meaningful information or pursue meaningful avenues of inquiry—by, for example, failing … to inquire further after a parent identified an extended family member with more information about the child's potential Indian ancestry" are relevant in assessing the adequacy of an initial Cal-ICWA inquiry. (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1151.) An inadequate inquiry requires conditional reversal of the juvenile court's order terminating parental rights with directions to the child welfare agency to conduct an adequate inquiry, supported by record documentation. (*Id.* at p. 1141.) "If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation …, there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child." (*Ibid.*)

### III. Analysis.

First, we note that both mother and her trial counsel's failure to participate in the ongoing ICWA inquiry and identify any ICWA errors on remand could be considered in evaluating whether a juvenile court abused its discretion. (See *In re Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1013 ["[I]f counsel do not identify any ICWA errors below, that fact

should be a relevant consideration in evaluating whether a juvenile court abused its discretion in finding that an ICWA inquiry was sufficient"].) "Counsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice." (*Furlong v. White* (1921) 51 Cal.App. 265, 271.)

"At some point, there must be finality to the ICWA [inquiry] process." (*In re Z.W.* (2011) 194 Cal.App.4th 54, 67.) Allowing parents to raise inquiry issues on second appeal after failing to raise those issues in the juvenile court at the postremand compliance hearing would further prolong the proceedings to the detriment of the child. (*In re Amber F.* (2007) 150 Cal.App.4th 1152, 1156; *In re X.V.* (2005) 132 Cal.App.4th 794, 804 ["We do not believe Congress anticipated or intended to require successive or serial appeals challenging ICWA notices for the first time on appeal"].) Mother has provided no reason that she should be exempted from the requirement that she raise her specific inquiry concerns in the juvenile court before making such challenges in a successive appeal. However, even if we were to excuse mother's failure to raise the issue on remand, we affirm the order since further inquiry was not required.

Mother contends the inquiry was inadequate because the juvenile court did not specifically reference the declaration detailing the inquiry of the child's paternal family members at the October 7, 2024, hearing. This argument essentially requests that we ignore the juvenile court's past consideration of the declaration at the August 9, 2024, hearing. The juvenile court explicitly referenced the department's August 8, 2024, ICWA declaration, and the court acknowledged the outstanding response from one of the Cherokee tribes stemming from the ongoing inquiry. Thus, the juvenile court was aware of the department's efforts to inquire of the child's paternal family prior to the subsequent finding that ICWA was not applicable on October 7, 2024.

We find no error based on the absence of a direct reference to the August 8, 2024, ICWA declaration at the later hearing, and mother cites no authority requiring that the juvenile court identify every piece of evidence that is relied upon during an ICWA determination. The law imposes an affirmative and "ongoing" duty to inquire whether a child may be an Indian child, and we can reasonably infer that the juvenile court was aware of the totality of the department's ongoing efforts when it made its ICWA determinations on October 7, 2024, and February 13, 2025. (§ 224.2, subd. (a)).

Next, mother also argues the department's efforts were inadequate because only two of three paternal great-aunts were interviewed about the family's possible Indian ancestry. However, we note that a great-aunt is not an "extended family member" for purposes of the mandatory initial inquiry requirements of ICWA or Cal-ICWA. (25 U.S.C. § 1903(2) [" 'extended family member' shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent"].) The duty of inquiry does extend to "others who have an interest in the child," but there is nothing to indicate that the unnamed great-aunt was interested in placement or otherwise involved in the children's lives such that an inquiry was required. (§ 224.2, subd. (b); *In re Dominick D.* (2022) 82 Cal.App.5th 560, 566, fn. 2, 567 [requiring initial inquiry of a maternal great-grandfather who served as the dependent's caregiver because he was included under "others who have an interest in the child"].)

Finally, mother asserts the information sent to the Cherokee tribes was inadequate due to the lack of information regarding the paternal great-grandfathers and the paternal grandmother's maiden name. After the department's concession in the previous appeal, the child's paternal family members provided additional information about the child's possible Cherokee ancestry.

16.

In the ICWA-030 form sent to the Cherokee tribes, the department provided the biographical information for the child, mother, and father. The department also shared the following biological relative information with the tribes: names and dates of birth for the child, parents, maternal grandparents, paternal grandparents, maternal great-grandmother, paternal great-grand-grandparents, maternal great-great-grandmother, paternal great-great-great-grandmother, and paternal great-aunt. The form also identified the maternal great-grandfather and maternal great-great-grandfather with unknown dates of birth.

After receiving the ICWA-030 form, the responses from the tribes did not indicate that there was insufficient information to determine the children's tribal citizenship or eligibility for citizenship. Thus, the juvenile court could find the agency met its obligation of further inquiry of the tribes as required under section 224.2, subdivision (e)(2)(C). None of the statutory criteria to establish a "reason to know" the children were Indian children was met. Thus, compliance with formal ICWA notice procedures was not required. Any insufficiencies in the forms sent to tribes, such as missing a birthdate or address for the child's grandparents, were "legally irrelevant." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1084; see *D.F.*, *supra*, 55 Cal.App.5th at p. 572 [where formal ICWA notice to tribes is not required, the court need not address any deficiencies in notices sent to the tribes].)

In sum, we conclude mother has failed to demonstrate the juvenile court and department failed to comply with their duty to inquire. The department's efforts were sufficient under the circumstances of this case, where the key information was the identities of paternal great-grandmother L.Y. and maternal great-grandmother Dorothy R. The tribes were provided with the full legal names, maiden names, and dates of birth, and the tribes did not require any additional information to make an eligibility determination. We therefore conclude the department's efforts were sufficient to fulfill the duty of

17.

inquiry, and its documentation gave the court an adequate basis for finding it had done so and that ICWA does not apply.

## DISPOSITION

The order is affirmed.


LEVY, Acting P. J.

WE CONCUR:


MEEHAN, J.


DE SANTOS, J.